# In the United States Court of Federal Claims

No. 12-861C

(Filed: September 30, 2013)

* * * * * * * * * * * * * * * *

|  |  |
|---|---|
| THOMAS R. CORNISH, | |
| *Plaintiff*, | Judicial pay; Judicial COLAs; Bankruptcy judges; 28 U.S.C. § 153(a); *Beer v. United States*. |
| v. | |
| THE UNITED STATES, | |
| *Defendant*. | |

* * * * * * * * * * * * * * * *

*Robert J. Campbell, Jr.*, Oklahoma City, OK, for plaintiff.

*L. Misha Preheim*, United States Department of Justice, Civil Division, Commercial Litigation Branch, with whom was *Stuart F. Delery*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director, for defendant.

*Deepak Gupta*, Washington, DC, with whom was *Brian Wolfman* and *Jonathan E. Taylor* for amici curiae.

OPINION

BRUGGINK, *Judge*

This is an action for back pay brought by an active duty bankruptcy judge. Judge Cornish's compensation is set by statute to "equal 92 percent of the salary of a judge of the district court of the United States as determined pursuant to [28 U.S.C.] section 135." 28 U.S.C. § 153(a) (2006). Plaintiff contends that he has not received his full statutory compensation because the compensation of district court judges has been improperly reduced due to Congress's failure to pay district court judges cost of living allowances ("COLAs") in 1995, 1996, 1997, 1999, 2007, and 2010. As a result, plaintiff's

compensation for the six years preceding the filing of this suit has been reduced, he contends, because it does not include the cumulative effect of those COLAs on his salary. With respect to liability, he relies on the Federal Circuit's decision in *Beer v. United States*, 696 F.3d 1174 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 1997 (2013).

Pending are the parties' cross motions for summary judgment. The matter is fully briefed and oral argument[1] was heard on September 19, 2013. For the reasons set out below, we agree with Judge Cornish and direct entry of judgment accordingly.

BACKGROUND

The parties agree on the material facts. As indicated above, the salary of bankruptcy judges is fixed by statute to be "equal to 92 percent of the salary of a judge of the district court of the United States as determined pursuant to section 135." 28 U.S.C. § 153(a) (hereafter "Section 153(a)"). The salary of district court judges, in turn, is impacted by the Ethics Reform Act of 1989, Pub. L. No. 101-194, 103 Stat. 1716 (1989), which directs that, whenever a COLA is given to General Schedule employees, the salary of judges is increased by the amount of that COLA, less 0.5 percent. *Id*. § 704. Although that scheme was followed for several years, in 1995, 1996, 1997, and 1999, Congress adopted language in omnibus appropriations legislation which had the effect of excluding judges from receiving those COLA adjustments. For example, in 1997, the blocking legislation read as follows:

> For purposes of each provision of law amended by section 704(a)(2) of the Ethics Reform Act of 1989 (5 U.S.C. 5318 note), no adjustment under section 5303 of title 5, United States Code, shall be considered to have taken effect in fiscal year 1997 in the rates of basic pay for the statutory pay systems.

Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 637, 110 Stat. 3009-364 (1996).

---

[1] The National Conference of Bankruptcy Judges and several individual bankruptcy judges were permitted to submit an amicus brief and participate in oral argument.

Although blocking legislation was not adopted in 2007 and 2010, district court judges nevertheless did not receive the adjusted General Schedule COLA for those years because Congress amended a 1981 appropriations rider commonly known as "Section 140." We quote from the Federal Circuit opinion in *Beer* for the rest of the narrative:

Section 140 originally read:

> Notwithstanding any other provision of law or of this joint resolution, none of the funds appropriated by this joint resolution or by any other Act shall be obligated or expended to increase, after the date of enactment of this joint resolution, any salary of any Federal judge or Justice of the Supreme Court, except as may be specifically authorized by Act of Congress *hereafter enacted*: Provided, [t]hat nothing in this limitation shall be construed to reduce any salary which may be in effect at the time of enactment of this joint resolution nor shall this limitation be construed in any manner to reduce the salary of any Federal judge or of any Justice of the Supreme Court.

Pub. L. No. 97-92, § 140, 95 Stat. 1183, 1200 (1981) (codified at 28 U.S.C. § 461 note) (emphasis added). While Section 140 originally expired in 1982, *see Williams*, 240 F.3d at 1026–27, it was revived by a 2001 amendment that added: "This section shall apply to fiscal year 1981 and each fiscal year thereafter." Pub. L. No. 107-77, § 625, 115 Stat. 748, 803 (Nov. 28, 2001).

Following the Section 140 amendment, Congress enacted legislation specifically allowing federal judges to receive the salary adjustments mandated by the 1989 Act in fiscal years 2002, 2003, 2004, 2005, 2006, 2008, and 2009. *See* Barbara L. Schwemle, Congressional Research Service, Legislative, Executive, and Judicial Officials: Process for Adjusting Pay and Current Salaries 2-4 (Feb. 9, 2011). For fiscal years 2007 and 2010, all General Schedule and Executive level federal employees received COLAs under 5 U.S.C. § 5303(a), but

3

>federal judges received no adjustments. Congress did not affirmatively authorize judicial COLAs in those years and took the position that, because of the requirements of Section 140, judicial COLAs could not be funded."

696 F.3d at 1178.

The critical step toward a determination in Judge Cornish's favor on liability occurred when the Court of Appeals for the Federal Circuit issued its opinion in *Beer*. In substance, it held that Congress violated Article III of the Constitution when it purported to exclude Article III judges from COLAs granted in 1995, 1996, 1997, and 1999 to all general schedule federal civilian employees. "[T]he 1989 Act reduced judges' income by banning outside income but promised in exchange automatic maintenance of compensation—a classic legislative quid pro quo. . . ." *Id.* at 1183. When it enacted the "blocking legislation in 1995, 1996, 1997, and 1999, Congress broke this commitment and effected a diminution in judicial compensation." *Id.* at 1185.

The Federal Circuit also held that the *Beer* plaintiffs were entitled by statute to the 2007 and 2010 COLAs because the attempt to enforce the amendment to Section 140 was ineffective. *Id.* 1185-86. On April 22, 2013, the Supreme Court denied certiorari in *Beer*. 133 S. Ct. 1997 (2013).

DISCUSSION

A. Liability

Plaintiff's argument is straightforward: 28 U.S.C. § 153(a) provides that "Each bankruptcy judge . . . shall receive as full compensation for his services, a salary at an annual rate that is equal to 92 percent of the salary of a judge of the district court of the United States as determined pursuant to section 135." In light of *Beer,* it is undisputed[2] that the salaries of district court judges for the relevant six year period preceding the filing of this lawsuit must be retroactively adjusted to reflect the missing COLAs. It also follows that the current salary of district court judges under 28 U.S.C. § 135 is $197,100. *See Beer v. United States*, 111 Fed. Cl. 592, 601 (2013). Judge Cornish's

---

[2]We recognize that the government has preserved its right to appeal the final judgment in our *Beer* decision.

entitlement to back pay and his current salary thus can be readily determined by reference to what the salary of district judges should have been over the six year period prior to the filing of Judge Cornish's suit, or so plaintiff contends.

Defendant disagrees. It concedes that, under *Beer*, the compensation of bankruptcy judges should reflect the 2007 and 2010 COLAs received by district court judges because the court's analysis was not dependent on the plaintiff judges' Article III status.[3] With respect to the COLAs for 1995, 1996, 1997, and 1999, however, the correct result, according to defendant, is that bankruptcy judges should only receive 92 percent of what district court judges would have received if Congress had succeeded in thwarting those four COLAs. The fact that Congress failed in its effort is immaterial to defendant. To put it differently, Congress actually succeeded in part, i.e., with respect to non-Article III judges. Because bankruptcy judges are not directly protected from salary reduction by Article III, defendant urges the court to construct a scenario which salvages as much as possible of Congress's effort to limit judicial pay.

Such a conclusion is belied by a straightforward reading of the controlling statutes. Section 153(a) is unambiguous: "Each bankruptcy judge shall . . . receive . . . a salary that is equal to 92 percent of the salary of a judge of the district court as determined pursuant to section 135 . . . ." Section 135, in turn, provides that district court judges "receive a salary at an annual rate determined under section 225 of the Federal Salary Act of 1967 (2 U.S.C. §§ 351-361) as adjusted by section 461 of this title." 28 U.S.C. § 135 (2006). In relevant part, Section 461 incorporates the 1989 Ethics Reform Act. *See* 5 U.S.C. § 5318 (2012). The Federal Circuit in *Beer* ruled that the pay scheme adopted in the 1989 Act must be honored despite the blocking legislation. The result is unavoidable: the salaries of district court judges must reflect the missing COLAs, and the salary of bankruptcy judges is set by statute at 92 percent of the salary of district court judges.

Defendant argues, nevertheless, that "[b]ecause he is not an Article III judge, Judge Cornish is not protected by the Compensation Clause from having

---

[3] Defendant did note its disagreement with the Federal Circuit's *Beer* decision regarding the 2007 and 2010 COLAs but did not provide an argument as to why Judge Cornish is not entitled to them other than that *Beer* was wrongly decided.

5

his pay diminished," Def.'s Mot. for Summ. J. 3. This is true but irrelevant. Judge Cornish is not relying on the constitutional argument used successfully by the plaintiffs in *Beer*. He does not need to. He has a perfectly straightforward statutory claim.

Defendant goes on to argue that, although the court in *Beer* ruled that the blocking legislation was unconstitutional as to Article III judges, it is enforceable with respect to other judges and executive officers. It cites *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), for the proposition that, "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* at 843 n.9. In so arguing, defendant abandons the first principle of statutory construction, namely, reading the text of the relevant provisions for plain meaning. Instead it chooses to probe the debris of the unconstitutional blocking legislation and in it discerns an "intention on the precise question at issue." The general principle cited by defendant is that "[E]ven assuming a conflict with the bankruptcy judge pay statute, Congress's specific intent with respect to these COLAs must take precedence over the more general language of the bankruptcy judge pay statute." Def.'s Reply and Opp'n 2.

We acknowledge the underlying tool of construction that subsequent particularized legislation generally takes precedence over prior, conflicting, generalized provisions of law. What defendant incorrectly assumes, however, is that it has established that the blocking legislation reflects a specific intent on the relevant issue. Plainly it does not.

The precise question here is whether, if the blocking legislation fails in its principal purpose of denying COLAs to all judges, Congress had a specific intent nevertheless to reduce the salaries of bankruptcy judges. To ask the question is to answer it: no, if the blocking legislation failed in its principal purpose of denying COLAs to all judges, Congress plainly did not express a specific intent to reduce the salaries of bankruptcy judges. The legislation says nothing in particular about bankruptcy judges.

The attempts to block COLAs were, in each case, a one paragraph addition to a massive annual appropriations bill in which the blocking paragraphs left exactly zero by way of a legislative history contrail. Even more important, as the amicus brief carefully lays out, the salaries of bankruptcy judges are part of a complex, interlocking superstructure of statutes that have

6

evolved over decades and which are the result, unlike the blocking paragraphs, of extensive debate and a lengthy legislative record, all leading to a carefully constructed, intentional end: bankruptcy judges earn 92 percent of the salary of district court judges. It would approach absurdity to unscramble that superstructure in pursuit of a chimerical congressional intent with respect to a piece of unconstitutional legislation. As the amici correctly observe, it would result in reading a substantive statute designed to preserve 92 percent parity in such a way as to result in permanent disparity.

Plaintiff offers a more apt line of statutory construction principles. He points out, for example, that repeals or amendments by implication are disfavored, citing *United States v. Welden*, 377 U.S. 95, 103 (1964). A repeal by implication would only be appropriate if the two acts are in irreconcilable conflict and the later act is clearly intended as a substitute for the former. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976). Morever, a void statute cannot affect a valid existing law. *See, e.g., Stewart v. Waller*, 404 F. Supp. 206, 215 (N.D. Miss. 1975). All three principles have application here. Accommodating a partial application of the blocking provisions would amount to an unwarranted amendment of Section 153; the blocking legislation is not clearly intended to supplant the parity aspects of Section 153 in the circumstance that it is found invalid as to Article III judges; and the blocking provisions have been found to be unconstitutional.

We also cannot overlook the confusion that would result from adopting defendant's position. Pay administrators within the Administrative Office of the United States Courts would, for the foreseeable future, have to be told to ignore a plain reading of the controlling statutes and pay bankruptcy judges "what Congress *really* wants them to be paid." One would have to construct a hypothetical district court salary by taking the current salary of a district court judge, backing out the cumulative effect of four COLAs, and then apply 92 percent against that figure. Those adjustments, of course, could not be found in any presently-controlling law.

The simple fact is that Congress tried, but failed, to limit COLAs for judges. We decline to award a consolation prize of applying the failed effort to non-Article III judges.

B. Damages

Having concluded that Judge Cornish's salary has been improperly

calculated during the six years prior to the filing of his claim, we move to the question of damages, as to which there is only one disputed issue: should Judge Cornish's back pay award be adjusted to reflect hypothetical increases in life insurance premiums? We concluded in *Beer v. United States*, 111 Fed. Cl. 592, that such an adjustment was not appropriate with respect to the Article III judges who brought that suit. We see no reason for a different result here and adopt the analysis set out in that opinion. *See id.* at 598-99.

Accordingly, defendant's motion for summary judgment is denied. Plaintiff's cross motion for summary judgment is granted. On the assumption that the court's rulings in this opinion are correct, the parties agree that Judge Cornish is entitled to net back pay through September 2013, in the amount of $93,383.39. We have attached to this opinion the underlying calculations in a spreadsheet prepared by the parties. In addition, pursuant to 28 U.S.C. § 1491(a)(2), the Administrative Office of the United States Courts is directed to reflect in the plaintiff's pay records the omitted COLAs, leading to a current annual rate of $181,332. Judgment accordingly.

        s/ Eric G. Bruggink
        ERIC G. BRUGGINK
        Judge