# In the United States Court of Federal Claims

No. 12-861C
(Filed: July 30, 2014)

* * * * * * * * * * * * * * * * * * * * * *

THOMAS R. CORNISH,
        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*.

* * * * * * * * * * * * * * * * * * * * * *

ORDER

      We entered judgment for plaintiff on September 30, 2013. *Cornish v. United States,* 112 Fed. Cl. 801 (2013). Pending is plaintiff's post-judgment motion under 28 U.S.C. § 2412(b) (2012) for attorney fees in the amount of $189,108 and litigation expenses totaling $5,387.64. The matter is fully briefed. Oral argument was held on July 18, 2014. Because plaintiff has not identified a basis on which fees can be awarded, the motion is denied.

      The facts surrounding this case are set out in this court's September 30, 2013 opinion, 112 Fed. Cl. 801. Plaintiff was successful on the merits and now claims he is entitled to fees and expenses pursuant to 28 U.S.C. § 2412(b), which states, "[T]he United States shall be liable for fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Plaintiff relies on the "common benefit" and "bad faith" exceptions to the traditional American rule that each party bears its own litigation expense. Plaintiff also cites the Back Pay Act, 5 U.S.C. § 5596, as an example of a statute that could provide him with a fee award.

      A. Common Benefit

      The "common benefit" exception allows attorney fees to be awarded when: "(1) the plaintiff shows that it has conferred a substantial benefit on

members of an ascertainable class, and (2) the jurisdiction of the court permits an award that will operate to spread the costs proportionately among them." *MVM, Inc. v. United States*, 47 Fed. Cl. 361, 364 (2000) (citing *Mills v. Elec. Auto-Line Co.*, 396 U.S. 375, 393 (1970)). The cost of litigation may be spread to all of the benefitted parties by assessing a charge for attorney fees directly against the recovered assets. *Knight v. United States*, 982 F.3d 1573, 1583 (Fed. Cir. 1993). The common benefit exception evolved from the "common fund" exception to the American rule that each party bears its own litigation expense. *See Aquinoga v. United Food & Workers Int'l Union*, 993 F.2d 1480, 1482 (1993). Under the common fund exception, a successful plaintiff is awarded attorney fees because his suit "creates a common fund, the economic benefit of which is shared by all members of the class." *Id.* Plaintiff did not cite nor were we able to find any case applying the common benefit exception without the existence of a fund created by the litigation and common to all of the other benefitted litigants.

Plaintiff argues that he benefitted and advanced the interests of all non-Article III judges by establishing liability and allowing expedited treatment to be given to all of the bankruptcy judges in *Houser v. United States*. *See Houser v. United States*, No. 13-706C, 2013 U.S. Claims LEXIS 2112, at *2-3 (Fed. Cl. Sept. 30, 2013) (citing opinion in *Cornish* to establish liability). Plaintiff suggested at oral argument that his fees and expenses case can be charged against the United States and paid from the United States' Judgment Fund as a way of reflecting that other Article I judges in different proceedings have benefitted from the work done by Judge Cornish in this case.

Defendant disputes the factual assertion underlying the request, namely that there was a direct connection between recoveries by judges in other lawsuits because of the result of this suit. It is unnecessary to consider that question, however, because we are persuaded that, even if others benefitted by being able to rely on the result here, the common fund rationale for shifting fees does not apply. The Judgment Fund is a general fund set up to pay the United States' litigation liabilities. It is not a common fund created by plaintiff's successful suit, and it certainly is not available to the court in this suit, other than to order payment with respect to Judge Cornish. Congress adds to the judgment fund when necessary, but that need is triggered by judgments in other, separate proceedings. We agree, in addition, with the decision in *Grace v. Burger*, 763 F.2d 457, 459-60 (D.C. Cir. 1985), *cert. denied*, 474 U.S. 1026 (1985), that assessing taxpayers generally is not a legitimate extension of the common fund doctrine. The common fund doctrine assumes a particularized pot of money available to the court against which to spread the

2

cost of generating that fund. Amortizing the cost over millions of taxpayers breaks the connection between benefit and cost sharing. Nor would we be authorized in this suit to reach into other litigation and siphon from awards in favor of other judges for the purpose of extracting a payment for the perceived proportionate share of benefit derived from this action. Even if those suits are in this court, they are insulated from this action. Plaintiff cannot recover under the common benefit exception.

B. Bad Faith

Plaintiff also claims he is entitled to fees because of defendant's bad faith conduct in this litigation. The bad faith exception is narrow and invoked in cases of "vexatious, wanton, or oppressive conduct." *N. Star Alaska Hous. Corp. v. United States*, 85 Fed. Cl. 241, 244 (2009) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). "Such an award is punitive in nature and should be imposed only in exceptional cases and for dominating reasons of justice." *Id*. at 244 (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)).

Plaintiff argues that, after the Article III judges in *Beer v. United States* were awarded back pay and correction of their pay records to reflect previously denied cost of living adjustments ("COLAs"), defendant should have known that all judges whose pay was statutorily linked to the pay of Article III judges would also be entitled to an increase in salary and back pay. According to plaintiff, defendant should have taken corrective action immediately, and because it did not, plaintiff was forced to file suit. Plaintiff quotes our ruling in the September 30, 2012 opinion that plaintiff had a "perfectly straightforward statutory claim," offered a "more apt line of statutory construction principles," and that "it would approach absurdity to unscramble that superstructure [of judicial pay statutes] in pursuit of a chimerical congressional intent with respect to a piece of unconstitutional legislation." *Cornish*, 112 Fed. Cl. at 805. Defendant's interpretation would have resulted in administrative confusion and inconsistency with the linkage between Article I and Article III salaries. Plaintiff concludes that defendant's position was therefore unworkable and arbitrary and could justify an award of attorney fees.

Defendant answers that its litigation position was justified because the issues presented were of first impression. Accordingly, it could not have been proceeding in bad faith.

Plaintiff responded at oral argument that this case did not present an issue of first impression because Congress has already spoken on the issue. Plaintiff's point was that 28 U.S.C. § 153(a) was enacted to ensure that bankruptcy judges were treated equally with respect to COLAs. Plaintiff pointed to the amicus brief of the National Conference of Bankruptcy Judges ("NCBJ"), filed during the liability phase of this case, wherein the NCBJ explained that 28 U.S.C. § 153(a), which guarantees each bankruptcy judge a salary equal to 92 percent of that of a district judge, was enacted after *United States v. Will* held that a different set of COLA denials for Article III judges were unconstitutional, 449 U.S. 200, 226-30 (1980). The brief explained that there was a general understanding in the judiciary that the *Will* holding did not apply to Article I judges, and thus 28 U.S.C. § 153(a) was enacted after *Will* to correct this general imbalance and insure the same salary protection for bankruptcy judges. Therefore, plaintiff argues, Congress' intent with the pay parity statute was already known, and this case was not one of first impression. Thus, in plaintiff's view, defendant unnecessarily opposed applying the COLAs to bankruptcy judges.

Although we agreed with plaintiff and the NCBJ that 28 U.S.C. § 153(a) was intended to create permanent parity in pay for bankruptcy judges, that does not resolve the question of whether the application of that statute to the facts of this case presented a novel question. Congress was not deciding the issue litigated in this case, nor could it. The courts are entrusted with resolving cases and controversies. There existed no prior judicial precedent that addressed the issue precisely litigated in this case. That is what is meant by a case of first impression. Although that may not *ipso facto* preclude a finding of bad faith, it makes proving bad faith more difficult. Indeed, it is not surprising that the Department of Justice would prefer to have a judicial ruling before taking it upon itself to accede to extending the *Beer* decision to Article I judges. The fact that we thought the statutory implications of *Beer* were plain does not mean that it was unreasonable to suggest that the constitutional protections for Article III salaries create principled differences. Except for arguing that defendant should not have opposed liability, plaintiff has not alleged any vexatious or oppressive conduct or shown that "dominating reasons of justice" dictate an award of fees in this case. Therefore, we find no bad faith on the part of defendant to warrant fee shifting.

C. Back Pay Act

Plaintiff also cited the Back Pay Act as illustrative of a statute that could provide him with fees under section 2412(b), in its reference to "any

4

statute which specifically provides for such an award." The Back Pay Act provides that:

> An employee of an agency . . . who is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee--
>
> > (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect--
> >
> > . . . .
> >
> > (ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with Chapter 71 of this title, or under Chapter 11 of Title I of the Foreign Service Act of 1980, shall be awarded in accordance with standards established under section 7701(g) of this title . . . .

5 U.S.C. § 5596(b)(1) (2012).

The Back Pay Act, however, cannot be what section 2412(b) was referencing as a statute that provides for an award of fees. Section 2412(b) intended to place the Government in the same shoes as "any other party," as in, "any party other than the United States." *Gavette v. Office of Pers. Mgmt.*, 808 F.3d 1456, 1466 (Fed. Cir. 1986). The Back Pay Act itself directly makes the United States liable to possible fee shifting. Section 2412(b) thus can refer only to statutes that make parties other than the United States liable for fees. *Id.*

We agree with defendant, moreover, that it is too late, after entry of final judgment, to invoke the Back Pay Act. The act is a source of potential liability against the United States for payment of back wages when wages have been determined to have been improperly withheld. Only as an incident to that

return of wages are fees allowed as an additional remedy. Plaintiff did not invoke the Back Pay Act in its complaint. It did not need to. The court has authority under the Tucker Act, 28 U.S.C.§ 1491 (2012), both to adjudicate liability pursuant to the pay statutes and to order the return of improperly withheld wages. Plaintiff has not asked to amend its complaint to include the Back Pay Act, and we agree with defendant that it is too late, after judgment has been entered, to amend the complaint to add it now. *See generally Stueve Bros. Farms, LLC v. United States*, 107 Fed. Cl. 469, 476 (2012) (discussing amendment after judgment). Finally, we also agree with defendant that the circumstances permitting an award of fees and expenses under the Back Pay Act (bad faith, egregious behavior, gross procedural error, etc.) are not present here.

In sum, the court does not have authority to shift fees to the United States. Accordingly, plaintiff's motion for attorney fees and litigation expenses is denied.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge